BLACKSHEAR AND OTHERS V. TURNER AND OTHERS.

Decided November 22, 1890.

County-seat election—Removal—Second election.

> Where, at a county seat election, the majority of voters favored a removal of the county seat, the question of removal is determined, although a larger number of votes were cast against removal than were cast in favor of removal to any one of the places voted for; and, at the second election, the existing county seat cannot be nominated to the electors to be voted for as one of "the two places having the highest and greatest number of votes at the first election."

APPEAL from Clay Circuit Court, Eastern District.

J. E. RIDDICK, Judge.

U. M. & G. B. Rose and J. C. Hawthorne for appellants.

1. The object of sec. 1160, Digest, is plain. The design is to confer on the people the right of controlling their local affairs, and to establish the county seat at the point desired by a majority of the voters. This obvious purpose was defeated by the ruling of the court below.

The votes against removal were so many votes in favor of Boydsville. Boydsville thus received 574 votes and Green-

way 413, and the election should have been between these two points.    Const., art. 13, sec. 3 ; 4 Kan., 490; 14 Kan., 382; 16 Kan., 296.

2.    The form of the votes was calculated to mislead voters, and cannot be construed as votes for an unqualified change.

*J. B. Boykin, F. G. Taylor* and *E. F. Brown* for appellees.

1.    Section 1160 cannot be construed in the manner con-- tended.    In order to a removal a number of votes larger than one-half the assessor's polls is required, while, if this carries, then a majority of those actually voting is sufficient to select the new county seat.    45 Ark., 400.

Every vote cast for change signifies two things : first, a desire for change, and, second, a preference of places.    95 U. S. 360; 45 Ark., 407.

The first question was settled by the first election, there being a majority, *i. e.*, more than half the polls, as by the assessor's list, for change, and the court properly ordered the new election between Greenway and Piggott, the places receiving the highest votes.    16 Kan., 296.

2.    The ballots cast were a substantial compliance with the statute, and the meaning was clearly expressed.

HUGHES, J.    This was a contest for the county seat of Clay county.    It was submitted on the following agreed statement of facts : ''It is agreed that the returns of the assessor of the number of polls show that twenty-one hundred and ninety-three electors reside in the county ;  and that, at the general election held on the 3d day of September, 1888, the question as to whether the county seat of Clay county should be removed from Boydsville to either Piggott, Greenway or Rector was submitted to the qualified electors of the county, and that they cast 413 ballots for change of county seat from

Boydsville to Greenway, and that 321 ballots were cast for change of county seat from Boydsville to Piggott, and that 218 were cast for change of county seat from Boydsville to Rector—all aggregating 1015; and that 119 ballots endorsed "Change of county seat from Boydsville to Greenway," 32 ballots endorsed "Change of county seat from Boydsville to Rector," and 55 ballots endorsed "Change of county seat from Boydsville to Piggott," were cast; that the last mentioned ballots were all printed, and that the words, "Change of county seat from Boydsville for," were printed on the ends of the ballots cast for state officers; and that the words Greenway, Rector or Piggott was all the writing on the ballots, and that 573 votes were cast against change of county seat.

"And thereupon the court declared the law to be as follows."

1.   "That the act of February, 1881, establishing separate courts in Clay county does not preclude or prevent the removal of the county seat of Clay county in the manner provided by the general statute for the removal of county seats.

2.   That, in an election for the removal of the county seat of Clay county from Boydsville, all ballots which have printed upon them the words "Change of county seat from Boydsville for" and then following the printed words "for" the name in writing of one of the places to which the removal is proposed are sufficiently certain as to the intent of the voter, and should be counted in favor of removal."

The court thereupon ordered an election between Greenway and Piggott.   The appellants saved all proper exceptions, and filed a motion for a new trial, which raises all the points, and that being overruled, appealed.

By section 1160 of the Digest, it is provided: "If such majority of the qualified votes, although given in favor of a change or removal from the existing location, be not given

for the place (or one of the places, if more than one place be submitted), to which the change or removal is proposed to be made, the proposition shall be considered as rejected, and it shall be the duty of the county court, at its next regular meeting, to order a new election, to be governed in all respects like the first, except at the second election only the two places having the highest and greatest number of votes at the first election shall be put in nomination and voted for, and all votes cast for other than the two places above designated shall be void, and the place receiving the highest and greatest number of votes shall be and become the county seat.''

Under this act it was held that the second election should take place between Greenway and Piggott. Was this correct?

At the first election 573 votes were cast in favor of allowing the county seat to remain at Boydsville, 413 in favor of removing it to Greenway, and 321 in favor of removing it to Piggott, and 218 in favor of removing it to Rector.

In the brief of appellants, the contention is made that all votes that were cast against the removal of the county seat from Boydsville were cast in favor of Boydsville, and that, as there were more votes cast against removal than were cast for either of the places in nomination to be voted upon for the location of the county seat, therefore Boydsville and Greenway, the latter of which received a higher number of votes than any other place voted for by name at the first election, should have been nominated, as the two places to be voted for at the second election, in the order of the court fixing the time for the election and nominating places to be voted for.

Election to decide removal of county seat.    But a majority of the qualified electors at the first election determined the question of removal, and decided that the county seat should be removed from Boydsville; but there was a failure to determine, by a majority of those voting, to

what point or place it should be removed.   The second election was ordered in accordance with the statute to determine the latter question, and the question of removal, having been settled at the first election, could not be again submitted at the second election, nor could any place be nominated in the order of the county court to be voted for at the second election, save the two places voted for by name at the first election and having each a higher number of votes than any other place voted for.   (County seat of Osage County, 16 Kan., 296.)   Any other contention would lead to interminable and detrimental contests over the removal of county seats, and would, in the opinion of the court, violate the evident intention of the legislature, as expressed in the above act which is constitutional.

We cannot conclude that the ballots cast at the first election were uncertain, or that the endorsements thereon were misleading.

Finding no error in the judgment of the court below, the same is affirmed.